IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT SCOTT PAIG,

Petitioner,

vs.

JAMES YATES, Warden, Pleasant Valley State Prison,

Respondent.

No. 2:11-cv-00552-JKS

MEMORANDUM DECISION

Robert Scott Paig, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Paig is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Pleasant Valley State Prison. Respondent has answered, and Paig has replied. In his reply Paig requests an evidentiary hearing.

I. BACKGROUND/PRIOR PROCEEDING

An El Dorado County Superior Court jury found Paig guilty of continuing sexual abuse (Cal. Penal Code § 288.5) and committing a lewd and lascivious act against a child (Cal. Penal Code § 288(a)). The jury also found multiple victims were involved and that Paig had two prior felony convictions. On June 7, 2007, the trial court sentenced Paig to an indeterminate prison term of 100 years to life. The California Court of Appeal affirmed Paig's conviction and sentence in an unpublished decision,[1] and the California Supreme Court denied review on

[1] *People v. Paig*, No. C056058, 2008 WL 4483748 (Cal. Ct. App. Oct. 7, 2008). The appellate court did strike a $70 AIDS education fine.

December 10, 2008. On January 4, 2010, Paig filed a petition for habeas relief in the El Dorado Superior Court, which was denied in an unreported, reasoned decision on April 5, 2010. On May 11, 2010, Paig filed a petition for habeas relief in the California Court of Appeal, which was summarily denied without opinion or citation to authority "on the merits" on June 17, 2010. On July 26, 2010, Paig filed a habeas petition in the California Supreme Court, which was summarily denied on February 16, 2011, citing *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995), and *In re Swain*, 209 P.2d 793, 795-96 (Cal. 1949). Paig timely filed his Petition for relief in this Court on February 22, 2011.

The California Court of Appeal summarized the factual basis for Paig's conviction as follows:

> FACTS AND PROCEEDINGS
>
> [Paig] sexually abused his girlfriend's young daughter, M.M., when she was in grade school. On numerous occasions, [Paig] touched M.M.'s chest and buttocks, pressed his penis against her, and penetrated her vagina with his penis. [Paig] threatened to leave M.M.'s mother, or kill M.M. and her mother, if M.M. reported this conduct.
>
> [Paig] also once molested K.B., a friend of M.M.'s, when she slept over at M.M.'s house.
>
> [Paig] was charged with the continuous sexual abuse of M.M. and one count of lewd and lascivious conduct committed on K.B. He was also charged with having prior convictions for rape and sodomy. (§§ 667.61, subd. (c); 667.71; 667, subd. (b)-(i), 1203.0666, subd. (a)(5).)
>
> At trial, M.M. testified about the abuse inflicted by [Paig], describing several of these incidents with particularity. K.B. testified that when she spent the night at M.M.'s house, [Paig] rubbed her back and then put his fingers in her vagina.
>
> As discussed later in this opinion, evidence of other uncharged sex offenses was also introduced. [Paig's] daughter, J.P., testified that [Paig] had touched her vagina on several occasions when she was in grade school. The victim of [Paig's] charged prior offenses described the rape and sodomy that [Paig] had committed.

> [Paig] challenged the witnesses' credibility, pointed out the lack of corroborating evidence, and argued that he was being framed by the victims and their mothers.[2]

II. GROUND RAISED/DEFENSES

Paig raises a single ground—ineffective assistance of counsel—presenting a veritable laundry list of alleged errors that he contends constituted a systematic failure, contending that: (1) counsel informed Paig of his intent not to represent him adequately; (2) counsel failed to use exculpatory evidence to impeach a prosecution witness ("JP"); (3) counsel failed to effectively cross-examine one of the prosecution's witnesses ("JP"); (4) counsel failed to effectively cross-examine the prosecution's expert; (5) counsel failed to effectively cross-examine a second prosecution witness ("KJ"); (6) and (7) counsel's closing summation was inadequate; (8) counsel failed to introduce exculpatory physical evidence; (9) counsel failed to call investigating officers who searched Paig's home; (10) trial counsel was generally unprepared; and (11) trial counsel did not prepare Paig to testify. Respondent contends that Paig's claims are unexhausted or, alternatively, procedurally barred.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

[2] *Paig*, 2008 WL 4483748 at *1.

proceeding."[3] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[5] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[7] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[8] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

---

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412 (alteration added).

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

the trial with unfairness as to make the resulting conviction a denial of due process.'"[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[10]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[11]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

---

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[12] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[13] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[14]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal. If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[15] This is considered as the functional equivalent of the appeal process.[16] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

---

[12] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[13] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter,* 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[14] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[15] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[16] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

by clear and convincing evidence.[17]  This presumption applies to state-trial courts and appellate courts alike.[18]

A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."[19]  When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[20] "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."[21]  Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state-court decision was "objectively unreasonable."[22]  In conducting an independent review of the record, this Court presumes that the relevant state-court decision rested on federal grounds,[23] giving that presumed

---

[17] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[18] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[19] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).

[20] *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

[21] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

[22] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

[23] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

decision the same deference as a reasoned decision.[24] The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. Only by that examination may we determine whether the state court's decision was objectively reasonable.[25]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[26]

IV. DISCUSSION

**A. Evidentiary Hearing**

In his reply to the answer Paig requests this Court hold an evidentiary hearing. Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[27] In this case, Paig did not request an

---

[24] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[25] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (citation omitted). *But cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("Our standard of review is not controlled by *Delgado v. Lewis* . . . . There, we held that where a state court provides no rationale for a decision, a habeas court does not apply de novo review, but instead determines whether the state decision was objectively unreasonable based on its independent reading of the record. Here, however, the state court was not silent as to its reasoning . . . . Therefore, we review de novo whether Lewis waived his right to conflict free counsel . . . .").

[26] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[27] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (continued...)

evidentiary hearing in the state courts. Thus, it cannot be said on the record that the state courts precluded him from developing the factual basis for his claim.[28] It does not appear from the record that the California courts made any independent evidentiary findings, and Paig has not identified any factual conflict that would require this Court to hold an evidentiary hearing to resolve. The request for an evidentiary hearing will be denied.

**B. Procedural Bar**

As noted above, Respondent contends that, as an alternative to his failure to exhaust defense, Paig's claims are procedurally barred. The Court disagrees. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[29] This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[30] Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case, clearly and expressly states that its judgment rests on a state procedural bar.[31] While it is true that the El Dorado Superior Court relied upon the procedural bar that Paig's habeas petition was untimely, the California Supreme Court, the last state court to

---

[27](...continued)
(1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[28] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

[29] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[30] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[31] *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (citing *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)).

render a judgment, by citing *Swain*/*Duvall*, did not.[32]  Consequently, Paig is not procedurally

barred from bringing his Petition for relief in this Court.

**C.     Exhaustion**

Respondent contends that Paig has not exhausted his available state-court remedies.  This

Court may not consider claims that have not been fairly presented to the state courts.[33]  A citation

to *Swain* is an indication that the claims have not been stated with sufficient particularity.[34]  A

citation to *Duvall* is an indication that the claims not only may not be merely conclusory and

unsupported by a factual explanation, but must also be accompanied by reasonably available

documentary evidence where appropriate.[35]  A *Swain*/*Duvall* dismissal affords the petitioner with

the opportunity to refile an amended pleading curing the procedural deficiencies.[36]  This is

deemed to be a denial on procedural grounds, leaving the state remedies unexhausted.[37]  That,

however, does not necessarily end the matter.  Despite the fact that the California Supreme Court

denied the claim for procedural deficiencies, this Court must nonetheless determine whether the

---

[32] *See Gaston v. Palmer*, 417 F.3d 1030, 1039 (9th Cir. 2005), *modified on denial of reh'g*, 447 F.3d 1165 (9th Cir. 2006) (holding that a *Swain*/*Duvall* denial was not an indication that the petition was time-barred or lodged in the wrong court).

[33] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[34] *Swain*, 209 P.2d at 795-96.

[35] *Duvall*, 886 P.2d at 1258.

[36] *See King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003), *abrogated on other grounds by Evans v. Chavis*, 546 U.S. 189 (2006), *as recognized in Waldrip v. Hall*, 548 F.3d 729 (9th Cir. 2008).

[37] *See Harris v. Superior Court*, 500 F.2d 1124, 1128 (9th Cir. 1974) (en banc).

"federal standard of 'fair presentation' of a claim to the state courts has been met, [by] independently [examining Paig's] petition to the California Supreme Court."[38]

In this case, the petition Paig filed in the California Supreme Court was a photocopy of the petition filed in the El Dorado County Superior Court.[39]  Although not a photocopy, the grounds and factual allegations in the Petition filed in this Court essentially recite those made in the petitions filed in the California courts.  In addition to denying Paig's petition as untimely, the El Dorado County Superior Court, the last reasoned decision by a state court, also ruled that the petition would be denied on the merits.

> Even if [Paig] had prepared his petition in a timely fashion, his petition would still be denied on the merits.  A two-pronged test for determining if counsel rendered ineffective assistance was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  Under this test, a defendant must establish: 1) that his counsel's performance fell below an objective standard of reasonableness; and 2) that the deficient performance prejudiced his defense.  Id. at 687.
>
> With respect to a showing of incompetence, a showing must be made that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  Strickland at 685.  A court must determine whether, in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id. at 718.
>
> With respect to prejudice, it is not enough for a defendant to show that errors or omissions had some conceivable effect on the outcome of the proceeding.  United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986).  "He must show there is some reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland at 694.
>
> [Paig] fails to meet the Strickland standard in this case.  As to the first Strickland element, [Paig] must overcome the ". . . strong presumption that counsel's

---

[38] *Kim v. Villalobos*, 799 F.2d 1317, 1320 (9th Cir. 1986).

[39] Paig did include as attachments to his petition in the California Supreme Court copies of the May 2001 and May 2002 reports of the Florida Department of Children & Families he contends in his second ground that counsel did not use to impeach the testimony of JP.  It does not appear that these two reports were attached to Paig's petition in the El Dorado County Superior Court.

> conduct falls within the wide range of reasonably professional assistance." Strickland at 689. [Paig] must demonstrate that any claimed acts or omissions cannot be explained on the basis of any knowledgeable choice of tactics. As has long been held, "[C]ounsel is captain of the ship . . . ." People v. Freeman (1994) 8 Cal.App.4th 450, 485. That [Paig] might have desired, or now desires, some different action by his attorney is irrelevant. People v. Jones (1971) 16 Cal.App.3d 837, 844.)
>
> Further, [Paig], ". . . while entitled to reasonably competent representation, is not guaranteed a successful defense or even a letter-perfect defense. Even the most competent counsel may from time-to-time make decisions or conduct himself in a manner which might be criticized by other equally competent counsel but that is not the measure of competency of counsel on review by an appellate court. People v. Wallin (1981) 124 Cal.App.3d 479, 484-485.)
>
> [Paig] lists nine "Specific Instances" of alleged incompetence of trial counsel. Some of these "Specific Instances" do not survive the first Strickland element discussed above. Others, however, do appear, on their face, to be possible instances of incompetence.
>
> But, while some of [Paig's] "Specific Instances" provide examples of possible incompetence, [Paig] has made no effort to satisfy the second element of Strickland. [Paig] has not attempted to show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Again, a reasonably probability is a probability sufficient to undermine confidence in the outcome.
>
> The prejudice required by Strickland must be affirmatively proven. It is not sufficient for [Paig] to merely show that any errors could have had some conceivable effect on the outcome. To be entitled to a reversal of judgment on grounds that counsel did not provide adequate assistance, [Paig] must carry his burden of proving prejudice as a "demonstrative reality", not just speculation as to the effect of any errors or omissions of counsel. People v. Williams, (1988) 44 Cal.3d 883, 937.
>
> In this case, assuming that some errors may have occurred, there has been no "demonstrative reality" as to the effect of these supposed errors. [Paig] discussed at length the nine "Specific Instances" or alleged incompetence. But, he made no effort to demonstrate how these alleged errors prejudiced his defense. As [Paig] did not discuss or show that there is some reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, Strickland requires that the court reject his requested relief for an alleged ineffective assistance of trial counsel.[40]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Paig must show both that his counsel's performance was deficient and that the deficient performance prejudiced his

[40] Docket No. 12 at 6-11.

defense.[41] A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[42] Paig must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[43] An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[44] An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[45]

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[46] Indeed, the Supreme Court admonished in *Strickland*:

---

[41] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[42] *Id*.

[43] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[44] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)).

[45] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[46] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.[47]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[48]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[49]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the

---

[47] 466 U.S. at 689 (internal citations and quotation marks omitted).

[48] *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009).

[49] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

*Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[50]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[51]

In this case, the El Dorado County Superior Court found that Paig's claims in some instances may have satisfied the first *Strickland* prong, but in every instance Paig failed to satisfy the second prong.  The California Supreme Court on the other hand determined that Paig's claims were merely conclusory, unsupported by sufficient facts *in toto*.  These are nothing more than two sides of the same coin—the facts did not warrant granting Paig relief.  The difference being that the El Dorado County Superior Court did so with a more detailed explanation than did the California Supreme Court with its cryptic citation to *Swain*/*Duvall*.

Except for Paig's first claim, which is dependent on a decision favorable to Paig on his other claims, this Court will address each of his claims *in seriatim*.

Claim 2:  Failure to Use Exculpatory Evidence

At trial, Paig's daughter JP, then fifteen, testified about three incidents in which Paig had molested her when she was in the second grade.[52]  Trial Counsel had in his possession two reports made by the Florida Department of Children & Families, one in May 2001 and the other in May 2002.  Paig contends that trial counsel's failure to use these two reports, which he terms

---

[50] *Richter*, 131 S. Ct. at 785 (emphasis in the original).

[51] *Id.* at 786.

[52] Reporter's Transcript, Vol. I at 171-75.

as being "exculpatory," to impeach JP's "false claims" rendered counsel's representation ineffective.

In May 2001, a school counselor reported to the Florida authorities that when JP was 8, Paig "[played] a game called good twin, bad twin" and "[w]hen [JP] said bad twin, '[Paig] took her into his bedroom and remove her panties and stuck his organ inside of her.'"[53] During the interview by the Florida authorities, JP recanted saying "'I just made that up because I don't want to go to California to see my father.' When asked why she replied that he does not always pay enough attention to her and that she doesn't like the woman he lives with. When asked if anyone had ever touched her private areas, she said no."[54]

At trial, after acknowledging that the report was false, JP testified on cross-examination:

> Q. What was the reason that you gave Social Services that you were retracting your claim?
> Why did you tell them it wasn't true?
> A. I never gave them a reason.
> Q. You just -- do you know what you told them.
> A I told them that what I said about my Dad wasn't true. And that is all I told them.
> Q. So you told them about all of that?
> A. Correct.
> Q. And you lied about it -- they ask you why?
> A. They asked me why I lied, and I believe I told them I might have been a little scared to go see him because it was so far away. But that wasn't the truth.[55]

Paig argues that, because "Counsel had [JP] in a lie," defense counsel should have either introduced the May 2001 report or called the Florida investigators to testify as to what JP told

[53] Docket No. 1 at 28 (internal quotation marks omitted).

[54] Docket No. 1 at 28.

[55] Reporter's Transcript, Vol. 1 at 186.

them was the reason. He further argues that this error was magnified by the prosecutor's argument:

> Again speculating about what did or didn't happen. There is no evidence that the Florida authorities, after having their conversation with [JP], believed or disbelieved or did anything. There is no evidence about what the Florida authorities did or did not do other than the evidence we have from [JP's] own mouth.[56]

While the 2001 Florida report may have had impeachment value, it was not exculpatory. At this point, it had already been established that JP had lied to the Florida investigators about the allegations made against Paig. Because JP had already acknowledged that the accusation of "rape" referred to in the 2001 report was false, any further impeachment of a fifteen-year-old on a faulty memory of something she may have said seven years earlier was of minimal, if any, effect. It defies reason to assume that any reasonable juror would have used that to further discredit JP's testimony at trial. With respect to the prosecutor's comment, although the May 2001 report indicates that "[JP] recanted statements no indicators of sexual abuse," that would have merely stated the obvious, JP testified at the trial that she recanted the statements.

Paig quotes trial counsel as stating: "[JP] certainly made a claim, but then backed off, a claim that was apparently investigated by the authorities." Paig criticizes the use of the word "apparently," arguing that the use of that word cast doubt on the fact that the Florida authorities investigated, when in fact they did investigate and cleared him of sexual abuse. Paig's argument is specious and frivolous. When something is apparent, it is "clear or manifest to the understanding <reasons that are readily apparent>."[57] Paig also, quite conveniently, omits the

---

[56] Reporter's Transcript, Vol. II at 322-23.

[57] Merriam-Webster On-Line Dictionary, available on-line at

(continued...)

two sentences immediately following in counsel's argument: "And she recanted it and so they let it drop. They believed that she had lied about the case and then was telling the truth."[58] This totally eviscerates Paig's argument.

The May 2002 report, involving a registered sex offender with whom JP's mother was living, referred to an allegation made by JP as reported by a family friend: "[JP] commented she is 'grounded' but if "she gives her daddy a massage, he'll change his mind.'"[59] Paig contends that during the interview with respect to that incident JP "said no one had **ever** touched her inappropriately and if so she would tell her mom."[60] That is an incorrect characterization of what is contained in the report. The report states: "[JP] also said that he has never made any inappropriate comments or advances [towards] her. She also said she would tell her mother if anyone tried to anything to her."[61] Contrary to Paig's characterization, taken in proper context the reference to "he" is to JP's mother's then boyfriend, *not* Paig. Paig attempts to conflate a statement in May 2002 with a statement made a year earlier.

Claim 3: Ineffective Cross-examination of JP

Paig contends that, in addition to the failure to utilize the Florida report, trial counsel failed to elicit from JP that, despite her recanted accusation, JP in fact visited him the following and subsequent summers without molesting or raping her. This contention rings hollow. JP did

---

[57](...continued) http://www.merriam-webster.com/dictionary/apparent.

[58] Reporter's Transcript, Vol. II at 315.

[59] Docket No. 1 at 31 (internal quotation marks omitted).

[60] Docket No. 1 at 8.

[61] Docket No. 1 at 32 (internal quotation marks omitted).

testify on direct examination that she visited Paig the summers of 2002 and 2003, but not thereafter.[62] It was also readily apparent from JP's testimony on direct examination that there was no molestation during these subsequent visitations. It is not ineffective assistance to fail to elicit on cross-examination testimony that has already been elicited on direct. Paig makes a general complaint about the brevity of the cross-examination. Paig has not identified any further fact that could have been elicited from JP. Further cross-examination of a fifteen-year-old that does nothing more than cover ground already covered or attacks her credibility on minor misstatements of what was said seven years earlier creates a significant risk that counsel would be perceived by the jury as unnecessarily badgering the witness—a negative reaction.

Claim 4: Inadequate Cross-examination of Prosecution Expert Witness

The prosecution, over the objections of counsel, called Anthony J. Urquiza, PhD, as an expert on the Child Sexual Abuse Accommodation Syndrome. As the prosecution made clear in closing, Dr. Urquiza was called merely to educate the jury with respect to the common reactions children have and to explain the misconception with respect to delayed or partial reporting as not being inconsistent with molestation, not that it was proof there was molestation.[63] Dr, Urquiza had never met any of the witnesses and did not know anything about the case. Consequently, he was not asked to render an opinion about either the facts of the case or the credibility of the witnesses.[64]

---

[62] Reporter's Transcript, Vol. I at 180-82.

[63] Reporter's Transcript, Vol. II at 323.

[64] Reporter's Transcript, Vol. I at 230-57.

Paig contends that trial counsel did not challenge the expert's credentials, question him about studies in opposition to the syndrome, how the syndrome fit the named victims, or the fact that some children do in fact recant because they made a false claim. Most of his argument is directed to the failure of counsel to question the expert about the facts of this case.

Paig misconceives both the purpose and the tenor of the expert's testimony. Contrary to Paig's characterization, the expert's testimony was not offered to establish that JP was being truthful when she originally accused Paig and her recantation was a lie.[65] It was offered to provide general background on the syndrome. The expert testified on cross-examination that it was not within his field of expertise to determine whether a child had been abused or not; that was the province of the jury.[66] It was clear from the testimony of the expert that he was providing information as to what commonly occurs with the experience of the syndrome, not as it applied to this case. Counsel is not ineffective in failing to cross-examine an expert on matters that the expert has already acknowledged were not considered and upon which he could voice an opinion.[67]

Claim 5: Inadequate Cross-examination of KJ

KJ, the victim in Paig's earlier rape conviction, testified. Trial counsel did not cross-examine her, instead counsel simply stated: "[KJ], I am very sorry you had to come all this way.

---

[65] This argument is nonsensical and belied by the record. JP testified that her original accusation of rape was untruthful and no argument was ever advanced by the prosecution that JP's recantation was a lie.

[66] Reporter's Transcript, Vol. I at 259, 261.

[67] Paig's Counsel also pointed out in his summation that the expert's testimony did not establish that the victims in this case had actually been molested. Reporter's Transcript, Vol II at 317.

We have no questions." Paig argues that this statement was prejudicial in that it added sympathy to the victim and arguably inflamed the jury to form a dislike, prejudice, and bias against Paig. This is nothing more than conjecture or supposition unsupported by any evidence. It is highly unlikely that this inflamed the jury against Paig. Quite to the contrary, by expressing regret for the necessity for her testimony, counsel conveyed to the jury that because he had no questions for her it was the prosecution who compelled KJ to make an unnecessary trip.

Claims 6 and 7: Inadequate Closing Summation

Paig argues that trial counsel was ineffective because in his closing summation counsel did not discuss or explain the jury instructions or the elements of the crime (Claim 6) or argue against the factual accusations against him (Claim 7). First, there is no authority for the proposition that the summation by defendant's counsel must include a detailed explanation of the jury instructions. Second, this Court's review of the defense counsel's summation reveals that, contrary to Paig's claim, defense counsel did argue against the evidence, both as to its quality and the credibility of the witnesses.

Claim 8: Failure to Introduce Exculpatory Evidence

Paig contends that, because trial counsel did not introduce medical evidence that JP and MM had not been raped his representation was ineffective. Paig further argues that counsel should have sought out "affirmative proof that there was no evidence that supported the claims of rape." With respect to JP, there was no testimony that Paig had "raped" her. Indeed, the only testimony was that he had touched her with his fingers, not that he had entered her.[68]

---

[68] Reporter's Transcript, Vol. I at 171-75. As noted in the discussion of Paig's contention *vis-a-vis* the investigation by the Florida authorities above, JP had years earlier recanted her

(continued...)

In his closing argument, after noting that at first he could not understand the prosecution's references during jury selection to television shows, notably CSI and Law and Order, the catch phrase of how the people in CSI get their DNA results over the commercial break, defense counsel stated:

> And now I think I know. Because given the type of abuse, physical abuse that [MM] claims she underwent, I think there should have been medical evidence presented to you because I think the nature and extent of the abuse she claimed is something that in some way directly or indirectly would have been shared with the family physician.
>
> *We didn't get any evidence. We didn't get any DNA evidence over the commercial break. We didn't get any fancy slides. We didn't get some scientist celebrating about the relationship between the decay of some sort of atomic element and how much of it is found in a Snicker's bar.*
>
> We didn't get anything. We have nothing.[69]

After attacking the failure of counsel to introduce medical evidence to prove there was no rape, quoting the italicized portion of the above excerpt, Paig contends that "inexplicably, counsel then seemed to mock or diminish physical evidence's importance." Quite to the contrary, counsel was emphasizing the fact that there was no corroborative medical evidence and, at least in his opinion, MM should have shared her experience with her family physician, which, according to her testimony, she had not.

There is no indication in the record that any evidence that would either prove or disprove that MM had been raped exists. Nor does Paig contend that it does exist. MM's testimony indicates that she did not discuss the rape with the family physician, which is indicative that such evidence does *not* exist. A point that trial counsel emphasized in his closing—the *lack* of

[68](...continued) allegation that Paig had raped her.

[69] Reporter's Transcript, Vol. II at 318-19 (emphasis added).

medical evidence to support the charges.  What more counsel could have done to prove the obvious escapes logical explanation.

Paig presents a list of persons who *might* have been called to determine if either of the victims had made any claim of physical pain or injury at the time of the alleged molestation.  In light of the fact that the witnesses testified that they had *not* reported it at the time the incidents occurred, other than to corroborate a fact that was not in dispute, what this might have accomplished is both unexplained and inexplicable.

Claim 9:  Failure to Call the Investigating Officers

Paig contends that trial counsel was ineffective for failing to call the investigating officers who had searched his home to testify that they found no physical evidence that would suggest a propensity to molest and/or rape children.  Paig also argues that the failure to call Paig's ex-wife and former live-in girl friend to testify that they had never seen Paig associated with child or other forms of pornography and a forensic examiner to show that no such material existed on his computer.  As Respondent correctly points out, there never was any allegation or evidence introduced that Paig possessed, or even resorted, to such materials.  It cannot be said that the failure of counsel to introduce evidence to disprove a fact that was neither at issue nor relevant in the case constituted ineffective assistance.

Claim 10:  Counsel Generally Unprepared

Paig's complaint here is that trial counsel continuously referred to Paig as "Bob" when everyone knew him as "Scott."  He also points to a few instances where counsel confused the names of the victims with the victim's mother.  While this is true, the record also reflects that

counsel's misidentifications were quickly corrected. That this somehow caused the jury to become confused is merely conjecture and supposition, unsupported by any facts.

Claim 11: Failure to Advise on Right to Testify

According to Paig, beyond telling him that it was not a good idea to testify, counsel never discussed what testimony Paig could give, what questions could have been asked, or the pros and cons of a defendant testifying. Paig contends that the reason counsel made the "decision" that Paig would not testify was simply because counsel was unprepared.

Other than to take the stand and say that he did not do the crime, Paig does not reveal what his testimony might have been. On the other hand, counsel was fully aware of the fact that Paig had been convicted of rape, which would have significantly reduced his credibility. What is more important, however, is that Paig does not indicate in either his Petition before this Court or his petitions in the state courts, that had he been properly advised, he would have elected to testify.

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[70] The court must then consider those acts or omissions against "prevailing professional norms."[71] Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[72]

---

[70] *Strickland*, 466 U.S. at 690.

[71] *Id.*

[72] *Id.*

Paig has not met this heavy burden, nor did he meet it in his state court petitions.  He has shown no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen trial strategy.  Paig presented no alternate attorney's determination challenging what defense counsel provided.  He has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[73]  Paig has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced by any alleged omission as required by *Strickland-Hill*.

This Court cannot hold on the record before it that Paig exhausted his claims by fairly presenting them to the California Supreme Court.  Even if Paig's claims are reviewed on the merits, this Court cannot say that the decision of the El Dorado County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[74] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Paig's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  Paig has failed to establish that counsel committed any

---

[73] *Id.* at 688.

[74] 28 U.S.C. § 2254(d).

error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that Paig's defense was prejudiced, as required by *Strickland-Hill*.

V. CONCLUSION AND ORDER

Paig did not exhaust his state-court remedies by fairly presenting his claims to the state Courts. Nor has Paig shown that his trial counsel was ineffective.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[75] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[76]

The Clerk of the Court is to enter judgment accordingly.

Dated: September 25, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

[75] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[76] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.